Horace Kulzer Gmbh v. Esschem May it please the Court, Lawrence Rosenberg, on behalf of Petitioner Appellant Horace Kulzer, I'd like to reserve three minutes for rebuttal. Granted. The two provisions governing this case, Federal Rule of Civil Procedure 45 and 28 U.S.C. Section 1782, both provide a strong presumption of disclosure to aid litigants' search for the truth. In this case, notwithstanding the district court's determination that Horace's discovery requests met the threshold requirements under Section 1782, the court denied discovery because it committed two fundamental legal errors. Doesn't Rule 45, though, basically trump 1782 when it comes to trade secrets? I don't think it trumps it necessarily, Judge Roth, although they certainly act in harmony. And I would direct the Court's attention to the In re Baer case. That was the controlling case by this Court. And that case involved both Section 1782 and confidential information. There it was confidential patented information. And in the Baer case, the analysis proceeded under Section 1782. And while the Court didn't get into a detailed Rule 45 discussion, it did indicate that the appropriate way to handle the confidentiality issues was on remand for the district court to consider protective measures. But isn't an aspect of Rule 45 the availability of the material elsewhere? Can't that be considered under Rule 45, whereas it may not be considered perhaps under 1782? To a limited extent. And I think it's a line-drawing exercise, Judge Roth. Certainly under Rule 45, a district court can consider whether the information is already in the possession of the party seeking it, or whether it would be almost certain for it to be obtained. We would submit that even under Rule 45, an analysis that says there's some possibility that maybe you could get similar information elsewhere would be inappropriate under Rule 45. And it is, of course, forbidden under Section 1782. Well, I think when you say, as you said a moment ago, presumption in favor of disclosure, you're not reading the entire portion of C1 of Rule 45. It says, shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship. That's hardly a presumption of disclosure. Under the precise language of the statute, Judge Barry, I think you would have a point. However, the case law under Rule 45, most notably this Court's decision in the Reynolds versus Philip Morris case that Judge Roth authored for the Court, and a panoply of district court decisions have all held that in practice, Rule 45 does create a presumption of disclosure. The words, as you said, may not necessarily do so, but the practice does. And let me just say, regardless of whether Rule 45 fully controls this case, it is plain that the district court's decision was erroneous. In this case, the need that Horaeus had for this information was overwhelming. The information it seeks is smoking gun evidence that would directly show the presence of its trade secrets in the files of ESCAM, the party that is manufacturing two of the critical component parts in Biomit's bone cements. So it is not simply a substantial need. It's a compelling need. And there would be tremendous hardship to Horaeus if it were not able to obtain that evidence in this case. Is there a little bit of a cat-and-mouse game going on now? I mean, we're waiting for Indiana. We're waiting for either the district court judge in Indiana to decide whether the magistrate did it right this time. And the Seventh Circuit has stayed the first action there. And if Indiana would decide one way or the other, it would be easier here, correct? And maybe Indiana is waiting for us to decide. Well, to an extent, you have a good point. But I think it's not just a cat-and-mouse game. I think it's a catch-22. Well, it's not necessarily. Supposing the district court in Indiana reverses the magistrate judge and orders production of Biomit inks, whatever you're seeking there, that would make life a lot easier, even coming here later, wouldn't it? Maybe it would as precedent. But the information that ESKEM has is unique. The key is, in order to show chain of custody of these trade secrets to win the German trade secret misappropriation case, Horaeus is going to need to show that the trade secrets are in Biomit's files and in ESKEM's files. So this is a critical component of the trade secret case. What if the documents are not in Biomit's inks files? You've got how many other members of the Biomit group? Right. What do you do then? Well, if it's in ESKEM's files, it's going to show what Biomit entity it came from. That's what I'm saying. So it's interesting to see who will rule first. It is interesting. But I guess the fun— But aren't we a natural second—I mean, ESKEM is an interested party, correct? It's not a party to litigation. Is it officially? It's not a party to the German litigation. So wouldn't it make more sense to see what's going on with the Biomit issue and then chime in as opposed to almost jumping over Biomit and going to this, you know, peripheral character? With respect, Judge Hayden, not at all. ESKEM is the central character because in order to prove trade secret misappropriation in Germany, Horaeus is going to need to show that those trade secrets were in ESKEM's file. Now, ESKEM is the party that's manufacturing the two key components of the bone cements. If ESKEM doesn't have the trade secrets, it's going to be impossible to show that the trade secrets were used inappropriately, and thus the German action would not be able to be fully successful. Well, but that's different from misappropriation of trade secrets. Well, under the German action, it's both. It's both theft and use. That's the cause of action. I know. That's your argument to us. And it's a good argument because that you're trying to show us that the materials would not be duplicative. Right. Right. That's the German action. And this is the key point. If there's one place that's going to have all the evidence that Horaeus needs, it's here because they need the ESKEM evidence, and the ESKEM evidence would very likely show which Biomet entity gave it to them, which would provide the link in the chain of custody to Biomet. In the Indiana action, if we're lucky, we're going to get some evidence about Biomet, but we're not going to get the evidence about ESKEM. So really, this is the crucial occasion. Even more important, though? I mean, Biomet's the party in the German litigation. ESKEM's not. It's critical to link it to Biomet one way or another. That's certainly true. That would be, I think, Judge Hayden's question was very astute. I mean, we here, ESKEM, link the second cousin, aren't we? Well, I don't know about the familiar relationship exactly. Maybe first cousin, one's removed. But in any event, it's really critical to have it from both parties. And the fundamental point under 1782 is that that's what you have a better chance of getting it here. I'm just thinking aloud. If you got it in Indiana, you got the stuff from the Inc. Corporation in Indiana, and then you would know what communications they may have had with ESKEM. Maybe we will. Maybe we won't. Well, you should, unless, as you suggest. Right. If it's a different entity, we don't know for sure. Well, that's what I'm saying against Biomet Inc. Right. If you get that information, and you know that they had communications with ESKEM, then it makes sense. Well, if you get it or you don't get it, you can come back to the court in Pennsylvania and say, I got it, and it shows there was this communication. I need to get it. Or I didn't get it, and therefore, the only source that I could possibly get it from is here. And the district court having given you the right to come back, shouldn't we wait to see what happens? Judge Roth, respectfully, no. The clock is ticking on the German action. The current status in Germany is that there's been a continuance of a hearing until September 13th. And at that hearing, it is possible that the judge in Germany will say, I'm not going to wait anymore. Present all your evidence now, or you're done. Well, now, you've asked for three specific documents from Germany, three contracts, right? Yes. Have you heard on that yet? They have not ruled yet. The German court hasn't ruled yet. There's still applications pending. Supposing the German court were to say, were to order documents produced, that ESKEM produced documents? That ESKEM produced documents? Don't know how that would happen, Your Honor, because ESKEM isn't a party to the German proceeding, and I don't think there's jurisdiction. I think it's very unlikely that the court would do that. I think the bottom line here is, under Section 1782, it's impermissible to do the kind of analysis that the district court did, which said, you might be able to get it somewhere else. Under Rule 45, the key point is, the confidentiality interests are fully protected by the protective order that the district court entered, which is the standard protective order. But you don't get to a protective order until you show substantial need, that it cannot, that cannot be met. Without undue burden. But this court in Rebair said that you satisfy that simply by showing that the information is relevant, and that there wouldn't be any undue harm on the other party. Yeah, it's, I know your first point is exhaustion, and it's with a capital E, and I think what you have here is perhaps exhaustion with a little e, but it seems to me that if the district court in Indiana were to deny your request, or to affirm the magistrate judge, you'd have a very good chance of coming here, because you're quite right. It certainly appears that the German discovery rules are quite restrictive. The German discovery rules are restrictive, but I might add, there is absolutely no evidence that Germany wouldn't accept this. And, in fact, the recent ruling on the continuance motion suggests that the German court would, in fact, receive it, because one of the reasons it continued. Receive what? Evidence from the United States. Sure, I don't think they would assume that. Right. And so, I mean, the point of Section 1782 is that we're supposed to be providing discovery where it, you meet the threshold requirements. Having Horaeus wait until the Indiana court rules could very well kill its case. The Indiana court has done nothing fast. The current thing has been pending before the district judge for four months. Is it really our job, given what I, at least for me I'm satisfied, is a secondary road to go, to provide that route for you, the back channel way, because of a delay in the court that really has the primary responsibility, it's dealing with one of the parties in the German action? The answer is yes. I mean, we could have six actions in the United States, all seeking overlapping discovery. And under 1782, it would be appropriate for each of those courts to provide the discovery. But don't we have to consider Rule 45 in that consideration of the six courts that may have jurisdiction? Yes. They have the motion. Certainly. You have to consider Rule 45. And the point here is that this is critical, critical smoking gun evidence. We have a compelling need for it. And there certainly isn't any indication that we already have the information or we're necessarily going to get it any time in the very immediate future. So whether Rule 45 controls or Section 1782 controls, the bottom line is, this is information that Harais should get under the statute and under the rules. I see my time is just about up. If there are no further questions, I'll reserve the rest for rebuttal. Thank you. Thanks. Ms. Platt. May it please the Court, my name is Mary Platt, and I represent ESKIM, Inc., Your Honors. The Court's analysis of the issues on appeal, I think, have to start with INTEL. INTEL stands for three important principles that are applicable here. The first principle is that Section 1782 authorizes, but does not require, a district court to grant discovery. And the Supreme Court pointed out this principle in a couple of places in that opinion. The second principle, which I believe is important to the argument that Harais makes regarding exhaustion, is that foreign discoverability and other considerations, such as how the foreign court would receive evidence, may be considered in the Court's exercise of discretion. The Court said that foreign discoverability was not a threshold requirement of the statute. Well, certainly 1782 cannot consider as limiting what other courts and other countries allow because most of them are very much more restrictive than the United States. So 1782 would be a toothless statute if we always considered, would the Court and the other country permit this? Your Honor, I believe that the Supreme Court left open to the district court's exercise of discretion to consider what it believed to be relevant circumstances. And, Your Honor, I agree in most circumstances that might be the case. But not the Court did not impose a bar on considering foreign discoverability. It said that comedy may be something that a court would consider. It's a consideration. And finally, the Court in Intel, noting the language in the statute, making the Federal rules applicable and preserving legally applicable privileges, stated that there was no reason to believe that the controls in the Federal rules and these privileges would not be effective, would be ineffective to prevent the disclosure of trade secrets. Your Honor. And that's what we're having a discussion about today. If the district court in Indiana or the Seventh Circuit were to affirm, would you continue to argue that Horaeus did not meet the substantial need test here? Your Honor, I would argue that it didn't meet the, that the decision in Indiana foreclosed it under 1782 from getting any of this discovery. I would say that they still had an opportunity. That's not my question. My question is, if they can't get anything in Indiana, would you continue to say they've not met the substantial need for those materials here? For the ESKIM. Your Honor, I would say that because they still have an opportunity to go to Germany. And in Germany, they can ask for specific documents, as they have done. But ESKIM is not a party. And. ESKIM is not a party. But at the same time, what they are looking for from ESKIM is what would be in Biomet's files. No, it's not. I mean, Ms. Rosenberg explained it. They are looking for the tracks in ESKIM's files of what, if their allegations are correct, was provided to them by Biomet. Your Honor, there would be in Biomet's files an invoice, a purchase order, shipping information, directions from Biomet to ESKIM as to what to do. The issue isn't, did Biomet do business with ESKIM? The issue is, did Biomet provide ESKIM with formulas which, in fact, are Horaeus' trade secrets so that ESKIM could provide to Biomet the ingredients for its cement? And if the Indiana court says they can't get the Biomet materials, the only place they can get them at the ESKIM part of them is here. Not, Your Honor. If I agree with Judge Roth that those issues are important to their case, but they can get that information and should get it from Biomet, Your Honor. And they could, they are seeking it in the German litigation now. So if they argue about transmittal. Let's talk about the German. I mean, I don't think there's any real dispute that the German discovery procedures are more restrictive than they are here. And I don't think there's any real dispute that they have to specify the particular documents they're looking for. And you have to know what you've got before you can specify it. So it's a little bit of a circle there, isn't it? How do they know, with any precision at all, what the number of the purchase order is they're looking for, et cetera? Your Honor, I agree with you. So then wouldn't they have satisfied here the substantial need test that they cannot, they cannot get materials other than here? Your Honor, they have specified a purchase order in their request to ESKIM. So they know a purchase order number. They have said they want the supply agreement. So they can describe those with specificity. Some of the materials that Herreia seeks are readily accessible, I gather. You say in your red brief at 37, supply agreements and purchase orders relating to ESKIM sales transactions with Biomet, ESKIM's internal correspondence with Biomet would be readily accessible, wouldn't it? Not the internal correspondence, Your Honor, but the supply agreements and the purchase order. We acknowledge, which are request number two and four in their July 31st letter, we acknowledge that they would not be burdensome to produce. It is the other numbers one and three that would be burdensome. Let's just stay there. So why don't you turn those documents over? Your Honor, those contain trade secrets, Your Honor. But we have a protective order. Your Honor, the protective order will not be effective in this particular case because we are dealing with a German proceeding. That may be. But you will concede then that supply agreements and purchase orders, they can get them here in the Pennsylvania action. We are only saying it is not burdensome to produce them, Your Honor. But you're saying you don't have to. We're saying that we should not have to because they have the obligation to show substantial need and they haven't shown that without undue and that would not otherwise be met by without undue hardship. Your Honor, they haven't met that standard. You just said there's no undue hardship here. And we'd have to you'd have to agree that there's there's a need for them. Your Honor. Given the theory of the case. There is not a need to get those documents from ESKIM. They should be getting them from Biomet and those Biomet companies. I think there was a maybe Judge Behr's question. A certain amount of cat and mouse going on and I can't help thinking that we're on the cat and mouse trail here. You're saying this is easily producible, but you shouldn't have to because they should get it from Germany. But we know Germany is more restrictive and we're just doing this circle and I can understand Mr. Rosenberg's frustration that it seems to be a catch 22 going on. Your Honor. There are good reasons why the Indiana court has not allowed at this point by Horace to obtain these documents from Biomet. Those reasons are set forth in their opinion. Those are the Biomet documents. We're talking the ESKIM documents. And if if as if if a court in Indiana says that by Horace should not be getting these documents from Biomet and has good reasons for saying that I think this court, the district court, if if on a second application it is presented with these issues, the district court should heed or consider that those decisions in Indiana. So you're saying there is a kind of hierarchy that that Mr. Rosenberg can't really go around and find his smoking gun even if he's pretty sure he can show that ESKIM has documents that would nail down the issue with or without Biomet's cooperation. You're saying that there really is a hierarchy that Indiana speaks first. And if Indiana says no, per force. That would guess you're on. No. In fact, we all need collateral estoppel. It was not no different people. Different party. Could ESKIM have been sued in Indiana? No, Your Honor. I don't believe it is a local small local company. Well, isn't that a very strong argument in favor of Mr. Rosenberg's position that that ESKIM has to be sued here if he can convince the court here that there is substantial need for the information in the ESKIM files? How can we be bound at all by what happened in the 72nd? Your Honor, I don't believe there's a substantial need to get what's in ESKIM's files. He may have a substantial need to get what's in Biomet's files because he has to link it back to Biomet. Mr. Rosenberg explained to us what he wants out of ESKIM's files. And I think, frankly, I think that makes sense. He can't get anything from Germany as to ESKIM, right? Would you agree with that? Your Honor, he can get from Biomet. No, ESKIM is not ESKIM. He can ask for Biomet. He can ask in the German documents. He cannot get them from the in the German action. He cannot get documents that are in ESKIM's files, but he can get the same pieces of paper that are in the Biomet files that are parties in that German litigation. That may be. Well, we're talking about the ESKIM now. But to the extent that that ESKIM files contain things that Biomet would not have, those are the crown jewels for ESKIM. Those are its deepest, most confidential trade secrets that enable it to be successful. But they're not available to him anywhere else. But, Your Honor, those trade secrets of ESKIM are not relevant to his litigation. But why are they that important? If they're that important to him, which you concede. Your Honor, I don't concede that. You just said that. I concede that. You said that's the crown jewels. Those are ESKIM's crown jewels. ESKIM's crown jewels. But he doesn't need ESKIM's crown jewels. What he needs is to see what is in Biomet's files to determine whether Biomet took their trade secrets and used them. And they can determine that from Biomet's files. And if there are an ESKIM, if there's an ESKIM invoice in those files, he can get that from ESKIM. Well, it's more than an invoice. As I said earlier, I gather it's recognized that Biomet and ESKIM did business. But one of the issues is in supplying ingredients, in ESKIM supplying ingredients to Biomet, did ESKIM have knowledge of Horaeus' trade secrets transmitted to them? One would suppose through Biomet. And that would show up in ESKIM's file. Now, Biomet is not going to file a letter, dear ESKIM, these are the trade secrets we stole from Horaeus. Please use them in formulating the ingredients you send to us. So that it's a little bit of... A letter or email to ESKIM saying how they want this product made. Yeah, right. And that would be in the Biomet, in the Biomet files. It might be. It should be, Your Honor. If ESKIM got it, it would have had to have been sent. So I return to my question, the very first one. Supposing the Indiana court affirms the district, affirms the magistrate, or the Seventh Circuit affirms the district court in the first action. They're getting nothing from Biomet there. Right? If that's, that may be, Your Honor, or it may be that they get documents. But not if there's an affirmance. They still, they still have the opportunity to get them from Germany. And they can get them from the Biomet companies who are parties in that case, as opposed to going to a third party and delving into their trade secrets. The present protective order, I gather that, that Jaraez has said it would, it would adhere to is that outside counsel would do, would be the only entity first to do a review of the files. And if they determined then that there was information in the files that was relevant, they would go back to the court for further disclosure of that information. Is that correct? Your Honor, Jaraez's counsel, in response to Judge Roof's question, acknowledged that in order to read these documents, you need an expert. And he proposed a lawyer in Germany, Dr. Klinkert, who I believe is here today. And my response to that is Dr. Klinkert is not subject to the jurisdiction of the federal district court. And so there is no way to bar a German lawyer or anybody in Germany from using this information. If Dr. Klinkert is here today, can't he be bound by a court order? Your Honor, he's in Germany. I don't believe, he's a German lawyer. I wouldn't think that a German lawyer is bound by the orders of a federal district court. And in any event, what this opens the door to, I mean, they say, well, we'll decide whether we'll use it or not. Well, if it's not helpful to Jaraez, it's probably going to be helpful to Biomet. And to the extent that this is trade secret information that ESKIM has not shared with Biomet, then in the German litigation, one or the other party is going to want to use it. So it's our position that it shouldn't go any further than it has gone. Let them try to get the information from the parties who are in the German litigation. And if they can't get it, they can reapply to Judge Ruth with a second application, which we will consider when it is filed. Any questions? No, thanks. Thank you very much. Rebuttal. I have just a few quick points. First of all, I want to correct. I just feel there's this secret thing going on here that, you know, the thing that dare not speak its name. And courts are being warned away from the secret thing that dare not speak its name. And I'm feeling very frustrated because I'm putting myself in the position of these magistrate judges who do have a feel for what's going on. And this overriding global outreach of 1782, it seems to me, is being somewhat misapplied. Tell me if I'm wrong, Mr. Rosenberg. It seems like we're jumping over a lot of discretionary decision-making from people who are closer to the battle than we are. There is some danger of that in some cases, Judge Hayden, but not in this case. And the reason I say that is that, first of all, this is critical central smoking gun evidence we're talking about in the case. So you say. Well, so we say. So we're as sure as we can be. We don't have the information. But, I mean, let me just, for 30 seconds. For a point, the October 30th opinion from the magistrate judge out there was a very careful opinion and very thorough. And he wasn't that impressed. He wasn't that impressed. The problem is the magistrate judge clearly erred in that analysis under 1782. In fact, the magistrate judge said from the bench that he believed the comity interests that were motivating intel, he didn't believe it. So, I mean, you have a judge who basically admitted he wasn't following the Supreme Court's precedent there. Well, wait a minute. You're telling me there's two opinions. There's one in April and there's one in October. Right. He confessed a little bit of error in the, about the April opinion, but then he went on a great length in the October, in great detail. He did. And that's on appeal to the district court. I mean, I think the problem there is the magistrate judge said that this would circumvent German proof gathering. There's absolutely zero evidence in that record that it would do so. And we've cited six cases in our brief where the federal courts have said that Germany is receptive to this kind of information. And the judge in our proceeding recently suggested, at least indirectly, that he's receptive to this. There's simply no basis for, I think, what the magistrate judge was doing there. But that's a different case. I think the critical issue in this case is that, as the court has recognized, the information in Eskam's files is absolutely critical to the German trade secret misappropriation case. I do want to correct a couple of statements about the German proceedings. Number one, there is simply no way we're ever going to get Eskam material in the German proceedings. There's no jurisdiction. We can't, you know, even if we tried to identify documents in Eskam's possession, the German court would never order it. The second thing is, with respect to Dr. Klinkert, who's in the courtroom. Well, it could have been enforced even if it did. Right. Exactly. Dr. Klinkert is absolutely subject to this court's jurisdiction. If he signs that protective order, he is subject to the district court's enforcement powers. The district court could do a whole panoply of things to enforce it, not the least of which is sanctioning Dr. Klinkert, sanctioning Herrera, sanctioning American Counsel, making life extremely difficult. Can I just interrupt? When you say there's absolutely no way you're ever going to get this from the German courts, isn't one of the factors that guides district courts in making the decision to permit 1782's reach whether or not there is an attempt to go around the proof-gathering rules of foreign tribunals? Yes, that's one of the intel factors. So aren't you saying we're never going to get it in the foreign tribunals, so give it to us? Right. But this court in Bayer specifically said that the fact that a foreign tribunal doesn't permit it doesn't mean that it circumvents their proof-gathering restrictions. It's simply they don't have the procedures to allow it to happen. I understand, but you're saying that there's almost an animus that you're talking about. This is never going to happen. No, there's no animus. There's just no way to get it from ESCAM because they're not subject to jurisdiction. I'm sorry I was unclear about that. No, my mistake. Go ahead. Okay. I see my time has expired. If there are any other questions. Anything else to say you can say? Okay. No, just in conclusion, this is critical information, and 1782 is designed to allow us to get this kind of critical information. There's a fully sufficient protective order here. An outside counsel-only protective order is the most restrictive possible. And as Ms. Platt admitted, there's no undue burden on ESCAM to produce it. In these circumstances. Well, that's certain categories of materials, not all of them. Well, but. I asked a very, very specific question. No, you're right, Judge Breyer. Just for one second, though. In his deposition, Mr. Norquist, the CEO, specifically admitted that most of the documents were in a locked file drawer in his office, which he obviously knows where it is. And the rest could be pulled up in a matter of minutes on his computer. Thank you very much. Thank you very much. We will take the case.